[No. 8107.   Department Two.   June 14, 1909.]

SAMUEL ADAMS, *Appellant*, v. M. A. WINGARD *et al.*,
*Respondents.*[1]

FRAUDULENT CONVEYANCE—HUSBAND TO WIFE—EVIDENCE OF GOOD FAITH—BURDEN OF PROOF. Under Bal. Code, § 4580, casting the burden of proof upon one asserting good faith in transactions between husband and wife, a deed from the husband to a wife in consideration of love and affection is not shown to have been made in good faith, where it was made on the same day that suit was brought against the husband, and before judgment the husband and wife joined in a deed of other property which was admittedly a fraud upon creditors; and a mere assertion by the wife that there was no collusion is not sufficient under the circumstances.

SAME—RETURN OF NULLA BONA—SOLVENCY OF GRANTOR—BURDEN OF PROOF. Where a creditor made at different times two conveyances in fraud of creditors, a return of an execution *nulla bona* is *prima facie* evidence that there was no other property out of which to satisfy the debt, subjecting both conveyances to attack; and the burden is upon the defendants to show affirmatively that the second conveyance, which was set aside, was sufficient to satisfy the debt, in order to sustain the first conveyance on the theory of solvency at that time.

[1]Reported in 102 Pac. 426.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered July 2, 1908, upon findings favorable to the defendants, after a trial on the merits before the court without a jury, in an action to set aside conveyances of real property. Reversed.

*A. H. Garretson* and *J. W. A. Nichols,* for appellant.

*Harry H. Johnston,* for respondents.

DUNBAR, J.—A judgment was obtained by the plaintiff against defendant L. J. Wingard, who it was alleged had alienated the affections of the wife of the appellant and afterwards married her. The judgment was for $750. On the date of the commencement of said action, to wit, the 3d day of February, 1906, L. J. Wingard deeded to his then wife, M. A. Wingard, formerly the wife of the plaintiff in this case, a certain tract of land in King county. A judgment in that action was obtained October 26, 1906, and on October 4, 1906, Wingard and wife conveyed to defendant H. H. Brown certain property in Pierce county. This action was commenced October 25, 1907, to set aside both said conveyances as having been made in fraud of plaintiff, and to have said property subjected to plaintiff's judgment for damages. The defendant L. J. Wingard defaulted. The other defendants, M. A. Wingard, the wife, and H. H. Brown, answered, admitting the transfer of the King county property to the wife and that the only consideration was the alleged natural love and affection, and admitting the fraudulent transfer of the Pierce county property to said Brown; and joined with plaintiff in alleging said transfer to be without consideration and void, and asking that it be cancelled. At the close of the trial, the court ruled that the conveyance to Brown was fraudulent and that the same be set aside, but refused to set aside the transfer of the King county property to the wife. Judgment was entered in accordance with said ruling, and from said judgment, this appeal is taken.

As we have indicated, the defendant Wingard did not appear in this action, nor did he testify in the case. The only testimony on the subject of the transfer was that of the wife, M. A. Wingard, who testified that the consideration was love and affection, and that there was no collusion in the transaction. Conceding, without deciding, that love and affection are a sufficient consideration for the transfer of real estate as against existing creditors, our statute provides, Pierce's Code, § 3864 (Bal. Code, § 4580), that in every case where any question arises as to the good faith of any transaction between husband and wife, whether a transaction between them directly or by intervention of third person or persons, the burden of proof shall be upon the party asserting the good faith. This burden of proof in this case, in our opinion, was not met by the respondents.

The mere assertion on the part of the wife that there was no collusion is not sufficient, especially when viewed in connection with all the circumstances of the case. The deed was made out upon the same day that the husband was called to account for alienating the affections of the appellant's wife, which is of itself a suspicious circumstance. In addition to this, just a few days prior to the entry of the judgment against him, the defendant fraudulently conveyed the other tract of land in controversy to one Brown, and his wife joined him in the conveyance. This conveyance is admitted, both by Brown and by the respondent M. A. Wingard, to be fraudulent, Brown testifying that he knew nothing of the transaction whatever, and disclaiming any interest in the property, and Mrs. Wingard testifying to what seems to us to be an improbable story,—that while she admitted that she signed the deed to Brown, she did not know that it was a deed; that her husband had told her that there were some papers for her to sign, and that she had signed them believing them to be subpœnas in the case. She testifies that one Mrs. Remster was in company with her at the time when she signed those papers. She does not pretend to explain how she came to be

signing subpœnas for witnesses in that case, or why Mrs. Remster should be signing subpœnas for witnesses with her, and she testifies that Mrs. Remster did sign the same papers that she did, the deed itself showing that Mrs. Remster had signed as a witness and that Mr. and Mrs. Wingard had signed the deed as parties of the first part, the acknowledgment of said deed having been properly taken by a notary public. These transactions, to our mind, do not place the respondents in this case in a very good light, but tend rather to strengthen the presumption that the conveyances were fraudulent, than to relieve them of that legal presumption.

But it is claimed that, under the law and the decisions of this court, the appellant could not recover in this case because it was not shown that there was no other property out of which his judgment could be satisfied. It is undoubtedly a well-established rule that a judgment creditor has no interest in any particular property of the debtor, and that all that he can ask is that there be sufficient property available to him for the purpose of satisfying his judgment. But in this case there was an execution issued and placed in the hands of the sheriff of King county, and a return of *nulla bona*. This return was *prima facie* evidence that there was no property out of which the judgment could be made. There was also other testimony tending to support the return of the officer, the attorney for the appellant testifying that he had searched the records and had made diligent inquiry, and was unable at any time to find any property in the name of the defendant or which was claimed by him.

It is true that, at the time of the trial of this case, there was an attempt to show that there was property in Pierce county which was subject to execution at the time the deed to Mrs. Wingard was executed by her husband. Conceding this to be true, these conveyances were fraudulent as we have seen, and the execution creditor had a right to attack either or both of them in aid of his judgment, and it is not within the power of the respondents to choose for him the particular

property upon which he shall levy.   It might be that, if it
had been shown in the trial of this cause that the Pierce
county property was ample to satisfy the judgment, the
judgment in this case would not be disturbed, for there would
be no necessity for such action.   But as the case now stands,
the fact urged by the respondents that the value of the
Pierce county property was not shown, is a fact which mili-
tates against them instead of the appellant, for it was in-
cumbent upon them to show affirmatively that appellant's
judgment could be satisfied out of the Pierce county property.

The judgment will therefore be reversed, with instructions
to enter a judgment in accordance with the prayer of the
complaint.

RUDKIN, C. J., CROW, MOUNT, and PARKER, JJ., concur.